**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

CLAYTON McCRAY,

              Plaintiff,

        v.

ALLEGHENY COUNTY, DONALD
STECHSHULTE, Medical Director; NANCY
PARK; NATALIE AUSTIN; LAURA
WILLIAMS, Chief Deputy Warden of
Healthcare Services,

              Defendants.

Civil Action No.  2:22-cv-493

**Electronically Filed**

## BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

The providers at Allegheny County Jail (ACJ) provided Mr. McCray with significant care and treatment between September of 2019 and 2020.  Mr. McCray had a significant medical history due to a years-old gunshot wound, that resulted in wounds to his right lower extremity.  Unfortunately, the treatment provided could not save Mr. McCray's leg.  And, in September of 2020, he underwent a right below-the-knee amputation.  Mr. McCray alleges the care was insufficient—indeed deliberately indifferent—and he has brought claims against Allegheny County, the physicians at ACJ, Donald Stechshulte, M.D. and Nancy Park, M.D., and Chief Deputy Warden of Healthcare Services, Laura Williams.

But Plaintiff, as illustrated by his own expert report, has a problem.  If Warden Williams was deliberately indifferent by overruling the physicians' orders, and thus ACJ policy, how could the physicians who were victims of such a scheme be deliberately indifferent?  If the physicians were deliberately indifferent by entering a treatment plan in contravention of outside specialists, as Plaintiff's expert proposes, how could non-medical

personnel like Warden Williams be deliberately indifferent by following the physicians' orders?  These are irreconcilable theories of liability.

Fortunately, both the testimony and documentary evidence are clear.  Warden Williams followed and enforced ACJ Policy.  When Warden Williams directly interacted with Mr. McCray, she sought to alleviate his concerns.  And she only interacted with Mr. McCray directly well after he had a presumed diagnosis of osteomyelitis and was assigned to medical housing.  When Warden Williams was made aware of a potential deviation from physician orders, as a supervisor, she intervened to ensure Mr. McCray received care as directed by the providers.  As an administrator and not a prescribing medical provider, she was entitled to rely on the judgment of medical providers.  In short, nothing in the record supports the deliberate indifference claims in Mr. McCray's Second Amended Complaint against Warden Williams.  She is entitled to summary judgment.

## **TABLE OF CONTENTS**

**INTRODUCTION**.................................................................................................................i

**TABLE OF CONTENTS** ..................................................................................................iii

**TABLE OF AUTHORITIES**...........................................................................................iii

**STATEMENT OF FACTS** ............................................................................................. 1

**ARGUMENT** ................................................................................................................ 1

    *A.   Warden Williams' direct conduct with respect to Mr. McCray was not deliberately indifferent*...........................................................................................................2

    *B.   Warden Williams' supervisory conduct was not deliberately indifferent.* ............4

**CONCLUSION** ............................................................................................................. 7

## **TABLE OF AUTHORITIES**

**Cases**

*Barkes v. First Corr. Med., Inc.*, 766 F.3d 307 (3d Cir. 2014) ......................................... 5, 6

*Bayete v. Ricci*, 489 Fed. Appx. 540 (3d Cir. 2012) ............................................................2

*Beard v. Banks*, 548 U.S. 521 (2006) .................................................................................1

*Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ...........................................................2

*Estelle v. Gamble*, 429 U.S. 97 (1976)................................................................................2

*Palakovic v. Wetzel*, 854 F.3d 209 (3d Cir. 2017) ..............................................................2

*Pearson v. Prison Health Serv.*, 850 F.3d 526 (3d Cir. 2017)..............................................2

*Rode v. Dellarciprete,* 845 F.2d 1195 (3d Cir. 1988)...........................................................2

*Sample v. Diecks*, 885 F.2d 1099 (3d Cir. 1989) .................................................................6

*Spruill v. Gillis*, 372 F.3d 218 (3d Cir. 2004).....................................................................3

*Watson v. Abington Twp.*, 478 F.3d 144 (3d Cir. 2007) .......................................................1

**Statutes**

42 U.S.C. § 1983...............................................................................................................2

**Rules**

Federal Rule of Civil Procedure 56....................................................................................1

## STATEMENT OF FACTS

*See* Defendant Laura Williams' Concise Statement of Material Facts, filed contemporaneously with this Brief in Support of Motion for Summary Judgment.

## ARGUMENT

Defendant, Laura Williams, seeks entry of summary judgment against Plaintiff, Clayton McCray, in this §1983 claim alleging deliberate indifference under the Fourteenth Amendment. If there is no genuine dispute of material fact, and judgment as a matter of law is warranted, Warden Williams is entitled to summary judgment. Fed. R. Civ. P. 56(a). If Mr. McCray cannot demonstrate that the evidence supports an essential element of his claim— on which he bears the burden at trial—the Court must enter summary judgment. *Id.*; *Beard v. Banks*, 548 U.S. 521, 529 (2006). The Court considers the evidence in the light most favorable to Mr. McCray, drawing all reasonable inferences in his favor. *Watson v. Abington Twp.*, 478 F.3d 144, 147 (3d Cir. 2007).

In ruling on this motion for summary judgment, the Court determines whether the evidence of record would permit a reasonable jury to return a verdict for Mr. McCray. But a mere factual dispute will not defeat summary judgment. The factual dispute must be over a material fact—that is, a fact essential to the elements of the claim that would affect the outcome of the case. If no such dispute exists, Warden Williams is entitled to summary judgment.

Mr. McCray's Second Amended Complaint appears to make two arguments alleging deliberate indifference with respect to Warden Williams. First, Mr. McCray claims that, by her direct conduct with respect to his care, Warden Williams was deliberately indifferent to his serious medical needs. ECF Doc. 65, ¶¶ 188–89. Second, Mr. McCray alleges that Warden

Williams was deliberately indifferent in her supervisory capacity. *Id.* at ¶¶ 186–87. Neither of these theories have evidentiary support and thus Warden Williams is entitled to summary judgment.

**A.    *Warden Williams' direct conduct with respect to Mr. McCray was not deliberately indifferent.***

Count II of Plaintiff's Complaint sets forth a claim for deliberate indifference under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983 against Warden Williams. Initially, Mr. McCray cannot rely on a theory of vicarious liability. *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020). Mr. McCray must allege "facts to show [Warden Williams'] personal involvement in the alleged misconduct." *Id.* "Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" *Id.* (citing *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1988))*.*

Mr. McCray must meet the following two prong test: (1) that his medical needs were serious; and (2) that Warden Williams showed deliberate indifference to those needs. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976); *Bayete v. Ricci*, 489 Fed. Appx. 540, 542-543 (3d Cir. 2012). "To act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm." *Palakovic v. Wetzel*, 854 F.3d 209, 227-228 (3d Cir. 2017).

Furthermore, deliberate indifference requires the official to act or fail to act in response to a serious medical need—where the official has the authority to act or fail to act. *See Pearson v. Prison Health Serv.*, 850 F.3d 526, 540, n.4 (3d Cir. 2017) ("Given that it is the physician with the ultimate authority to diagnose and prescribe treatment for the prisoner, a nurse who knows that the prisoner is under a physician's care is certainly justified in believing that the prisoner is in capable hands") (internal quotation omitted); *see also Spruill*

*v. Gillis*, 372 F.3d 218, 235–36 (3d Cir. 2004) (non-medical personnel not chargeable with deliberate indifference where prisoners are being treated absent showing of knowledge that the prisoner is being mistreated). That is, Warden Williams, as an administrator and not a healthcare provider, was entitled as a matter of law to rely on the physicians' and other providers' medical decisions.

Defendant does not contest that Mr. McCray had serious medical needs based on his prior disabilities due to a gunshot wound and his reoccurring right foot wound. But there is no evidence of record that Warden Williams showed deliberate indifference to those needs. Initially, because Warden Williams is an administrator, the medical contacts between Warden Williams and Mr. McCray are limited. The records only show direct contact between Warden Williams and Mr. McCray on three occasions (two prior to his amputation), as follows:

i.  On July 17, 2020, Warden Williams had a discussion with Mr. McCray regarding his complaints while he was in the medical housing unit (MHU). They had a brief conversation in which they discussed his wound and his concerns. There were no specific concerns addressed. AC_CM_000551.

ii. On September 12, 2020, following dissatisfaction with his request for a second opinion with respect to his potential amputation, Warden Williams and Mr. McCray had a discussion. Mr. McCray wanted a second opinion from UPMC. Warden Williams informed him that he had a right to a second opinion but not to choose the provider. Mr. McCray was frustrated with Warden Williams' responsiveness. AC_CM_000590.

iii. On October 3, 2020, after his amputation, Warden Williams discussed numerous concerns about Mr. McCray's ability to access tablets and his mental state following the amputation. AC_CM_000604.

All these interactions occurred after Mr. McCray was transferred to the MHU in June of 2020. None of these contacts involved medical decision-making. Nor could any of these direct

contacts plausibly be connected to Mr. McCray's injury (his osteomyelitis ultimately resulting in amputation).

There is no evidence of record that Warden Williams made any final decision with respect to Mr. McCray's medical care. *See* Deposition of Dr. Stechschulte, 27:3–4, 15–19; 30:11–13 (Dr. Stechschulte was final medical decision maker); Deposition of Dr. Park, 187:22–189:21 (neither Warden Williams nor corrections interfered with medical decisions); Deposition of Laura Williams, 199:24–200:6 (never overruled physician decisions). Furthermore, to the extent Warden Williams was involved in medical care, it was to enforce provider orders. AC_CM_000499, 002582 (Warden Williams instructs staff to ensure wound care is provided in accordance with providers' orders); AC_CM_002471–74 (Warden Williams instructs corrections that Mr. McCray cannot be transferred out of the MHU without physician approval). In interacting with Mr. McCray's care as an administrator and not a healthcare provider, Warden Williams was entitled to rely on the providers' orders.

Tellingly, Plaintiff's expert, Lee Ruotso, M.D., does not opine that Warden Williams did anything with respect to Mr. McCray's direct care. Expert report of Dr. Ruotsi, p. 6. Instead, with respect to Warden Williams, he specifically bases his opinion on "effected regulations" and "allow[ing] ACJ staff" to engage in inappropriate conduct. In other words, based on Warden Williams actions *as a supervisor*. There is no evidence supporting direct deliberate indifference as set forth at Paragraphs 123, 170–73 of Plaintiff's Complaint. And Warden Williams is entitled to summary judgment on that claim.

**B.    *Warden Williams' supervisory conduct was not deliberately indifferent.***

To establish liability for deliberate indifference under a supervisory conduct theory, Plaintiff must first identify a supervisory policy or procedure that the supervisor defendant

failed to implement. *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 330 (3d Cir. 2014), *rev'd on other grounds*, *Taylor v. Barkes*, 575 U.S. 822 (2015). But Mr. McCray fails at this initial step. There is no such policy highlighted in Mr. McCray's liability report. Instead, Dr. Ruotsi points to various alleged failures in medical care and asserts that Warden Williams "effected regulations and permitted corrections to take actions that directly contradicted McCray's *specialists'* medical orders." Expert report of Dr. Ruotsi, p. 6 (emphasis added). But the evidence makes clear that the medical care is determined by the provider orders; whether that care is the wound care, the durable medical equipment, the nutritional supplements, the medications, or the housing assignments. Deposition of Holly Martin, 34:24–35:11, 45:11–18, 63:16–64:12, 75:1–76:3, 78:4–16, 86:5–19, 112:25–115:15 (testimony of ACJ corporate designee); AC_CM_004378–82, 004386–4395, 004260–31, 004230–45 (relevant ACJ policies). And a non-medical administrator would not decide between a specialist's order and the in-house provider's orders, but would rely on the provider's treatment plan. Deposition of Holly Martin, 86:5–19. So, the policies and procedures that Warden Williams implemented required that personnel follow providers' medical orders.

Plaintiff has produced no evidence that suggests Warden Williams failed to follow that policy. Dr. Stechschulte testified that he was "in charge of the provision of medical care" and that Warden Williams did not have any "input into the direct medical care." 27:3–4, 15–19; 30:11–13. Dr. Park testified that she could not recall any medical instructions she provided that were not followed, except that Mr. McCray was placed on a self-wound care regimen. Dr. Park, 187:22–189:21.[1] But the only time Mr. McCray was on a self-wound care

---

[1] It is notable, given Plaintiff's allegations, that it would not be in either Dr. Stechschulte's or Dr. Park's interest to pretend that Warden Williams did not interfere in healthcare decisions if she did.

regimen was upon the order of Natalie Austin, PA during February of 2020. AC_CM_000445. And in uncontroverted testimony, Warden Williams testified that as Warden, she would never overrule a medical housing designation.  Deposition of Laura Williams, 199:24–200:6. There is no contrary evidence that Warden Williams ever overruled a provider decision in contravention of the ACJ policies and procedures.

Assuming Mr. McCray can point to some policy, he must also prove that: "(1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory procedure." *Barkes,* 766 F.3d at 330.  The essence of a supervisory claim is that a state official by her "*own* deliberate indifference to *known* deficiencies in a government policy or procedure, has allowed to develop an environment in which there is an unreasonable risk that a constitutional injury will occur, and that such an injury *does* occur." *Id.*, at 319–20 (emphasis original) (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)).  Importantly, such a claim is not centered on vicarious liability but concentrates on the supervisor's own conduct. *Id.*

The evidence demonstrates that in her capacity as a supervisor, Warden Williams' conduct was anything but deliberately indifferent, as follows:

     i.     On November 1, 2019, Warden Williams received notice of concern with Mr. McCray's dressing changes.  She noted the concern in his medical record and directed the Assistant Director's of Nursing (ADON's) to follow up with Mr. McCray's concerns. AC_CM_000499, 002582.

    ii.    On May 28, 2020, corrections emailed Warden Williams for permission to transfer Mr. McCray to the RHU following misconduct.  Warden Williams indicated that "[u]nless he is cleared by the physicians, he needs to remain on [the MHU]."  Once she was informed that he had been cleared, she approved the transfer. AC_CM_002471–74.

iii.  On June 3 and 11, 2020, Dr. Park sent two emails to Warden Williams indicating that MHU housing would be preferable for Mr. McCray and on June 11, 2020, Dr. Park entered an order that Mr. McCray be transferred to the MHU *upon release from the RHU* (scheduled for June 17). AC_CM_002483–90.

iv.  On June 18, 2020, Mr. McCray had completed his time in the RHU. But Dr. Stechschulte indicated that he did not need to be transferred to the MHU. AC_CM_002490–92. Dr. Park entered a new Medical Housing Classification order that assigned Mr. McCray to a handicapped cell and not the MHU. AC_CM_001592–93. Mr. McCray was transferred accordingly.

v.  On June 30, 2020, Warden Williams was informed by corrections that a PA had recommended Mr. McCray go to the MHU but that the MHU was full. AC_CM_002500. On the same day, Dr. Park and Warden Williams discussed Mr. McCray's condition and Mr. McCray was transferred to the MHU following Dr. Park's completion of the medical housing classification order. AC_CM_001633–34, 000533.

vi.  On September 8, 2020, Dr. Park informed Warden Williams that Mr. McCray wanted a second opinion. Warden Williams told Dr. Park to proceed with a second opinion. (AC_CM_000587).

Each of these interactions represent a situation in which Warden Williams took some action with respect to Mr. McCray's care. In each case, the action was to conform with provider orders, ensure provider orders were followed, or to help facilitate a physician's order. There simply is no evidence that Warden Williams was deliberately indifferent to Mr. McCray's care when she was informed of issues. The opposite—each interaction demonstrates Warden Williams' commitment to ensuring that the NCCHC inspired policies were followed. Warden Williams is entitled to summary judgment because there is no evidence that she failed implement a policy at all, much less failed to implement a policy in deliberate indifference to Mr. McCray's rights.

## **CONCLUSION**

Warden Williams' conduct in this case demonstrates the opposite of deliberate indifference. In each instance where she was informed of concerns with Mr. McCray's care,

she acted the same day to ensure that providers' orders were followed.  Plaintiff's expert

places much emphasis on the difference between specialist recommendations and the care

provided at ACJ by its providers.  But Laura Williams is not a clinician and is not equipped

to arbitrate between outside specialists and ACJ providers.  Her role was to, when she was

made aware of deficiencies in care, to ensure that the medical personnel complied with

physician and provider orders.  She did so.  There is no evidence supporting a claim that

Laura Williams was deliberately indifferent.  She is entitled to summary judgment.


                                        DICKIE, McCAMEY & CHILCOTE, P.C.

Date:   7/30/2025          By:   /s/ Kelly B. Cullen
                                        Jeffrey J. Wetzel
                                        PA I.D. #92843

                                        Kelly B. Cullen
                                        PA I.D. #327210

                                        Four Gateway Center
                                        444 Liberty Ave, Suite 1000
                                        Pittsburgh, PA  15222-1225

                                        Attorneys for Defendant,
                                        Laura Williams

**CERTIFICATE OF SERVICE**

I, Kelly B. Cullen, Esquire, hereby certify that a true and correct copy of the foregoing Brief in of Motion for Summary Judgment has been served this <u>30th</u> day of <u>July</u>, 2025, by ECF to all counsel of record.


DICKIE, McCAMEY & CHILCOTE, P.C.


By: ___*/s/ Kelly B. Cullen*_____
    Kelly B. Cullen

Attorneys for Defendant,
Laura Williams