# EXHIBIT 1

# Alfred Joshua, MD, MBA, CCHP-P, FAAEM
## P.O. Box 5000 PMB 525 Rancho Santa Fe, CA 92067

# EXPERT REPORT

## I. INTRODUCTION

My name is Alfred Joshua, MD, MBA, CCHP-P, FAAEM. My business address is P.O. Box 5000 PMB 525 Rancho Santa Fe, CA 92067. I have been retained as an expert by Assistant Solicitor Allegheny County Attorney John A. Bacharach Esq. in the case McCray v Allegheny County. et al. (Case No.2:22-cv-00493-LPL). My rate for consulting is $450 per hour and for court or deposition testimony is $950 per hour.

## II. BACKGROUND AND EDUCATION

I received my Doctor of Medicine from the State University of New York, Syracuse (Upstate University), and completed my post-graduate residency training at UC San Diego Emergency Medicine Residency program in San Diego. I completed a two-year fellowship in Hospital Administration at UC San Diego under the mentorship of the CEO, CMO and President of the Medical Group. I have been a licensed Physician and Surgeon in the State of California and have maintained my board certification in Emergency Medicine (ABEM) since July 2012. I have worked in the healthcare industry as an emergency medicine physician, primary care, detoxification services, and correctional medicine and administration. Additionally, I have a Master of Business Administration (MBA) degree from the University of California, Irvine. I received a Certification for Certified Correctional Health Professional (CCHP) from National Commission of Correctional Healthcare (NCCHC). I have also received the CCHP physician specialty certification (CCHP-P) upholding the highest standards of correctional healthcare There are only around 70 correctional physicians across the country who have received the designation as of November 2017.

### A. Professional Experience

I was selected in 2013 to lead the San Diego County Sheriff's Medical Services Division as Chief Medical Officer to design and manage a medical system that provides comprehensive medical care for the 91,000+ inmate/patients who are annually booked with a daily census of 5,800+ inmate/patients who are housed at seven detention facilities throughout the San Diego region covering 4,562 square miles. I have been designing an innovative managed care model for the county jails in order to meet the medical and financial challenges of AB 109, or Public Safety Realignment. I led the creation of a Managed Care Department for central utilization review within the Sheriff's Department and established new value-based hospital contracting in inpatient and outpatient medical care over past two years. I have revised or created 50+ Departmental Medical policies to standardize medical care across seven facilities as well as revising Sheriff's department

001

medical and psychiatric formulary to improve quality of care for patients. I have redesigned Mental Health care with a new Inmate Safety Program that is designed to reduce suicide deaths, attempts and safety cell placements. I have led the creation of a Telehealth program which provides and expedites timely access to outpatient specialty care for inmates. Prior to the Sheriff's Department, I served as the Senior Medical Officer in Healthcare Reform at Tri-City Medical Center and as Medical Director for Volunteers of America, a non-profit organization that assists the homeless and those rehabilitating from drugs and alcohol. I have completed a two-year hospital administrative fellowship at UC San Diego after completion of my emergency medicine residency. I have worked clinically in the Emergency department at UC San Diego and at Tri-City Medical Center and currently practice clinically at the Veterans Affairs Emergency Department. I served on the Board of Directors for San Diego Health Connect a leading national health information exchange platform located in San Diego and the Council of Mentally Ill Offenders (COMIO) and was appointed by the Speaker of the House of California in 2015.

In addition to the above, I had regularly met with other jail administrators and medical directors from several jurisdictions in Southern California to discuss emerging topics and best practices. I have served as a subject matter expert for the Medical/Mental Health Workgroup for Board of State and Community Corrections (BSCC) in 2016 to make the most recent revisions to Title 15 regulations, which govern jail correctional entities in the State of California.

From August 2018 through March 2021, I joined Prime Healthcare to serve as the Corporate Director of Correctional Healthcare Services for their 45 hospitals across the country. During this time, I built hospital healthcare systems for 19+ federal agencies which included Federal Bureau of Prisons, FBI, DEA, DOJ, Border Patrol, Borders and Customs, State Prisons, and Country Jails, to take care of their inmates with various and complex medical and mental health conditions in the environment of COVID 19. In addition, I served as the Regional Chief Medical Officer for two hospitals (Alvarado and Paradise Valley Hospital located in San Diego) during this time.

Since April 2021, I serve as a correctional healthcare consultant to assist organizations and entities with improving the quality and delivery of care for inmate populations as well as providing direct clinical care in an emergency department setting to veterans at the San Diego VA Medical Center as a Board-Certified Emergency department physician.

## III. PRESENTATIONS

1. Public Safety Group CAO Quarterly Presentation Panel – Mental Health in Regards to Public Safety Realignment – February 2014
2. Neighborhood House Association – Mental Health Presentation – March 2014
3. Citizens Law Enforcement Review Board Presentation – Suicide Prevention Strategies – June2014
4. Open Minds Presentation – Mental Health in San Diego County Jails – August 2014
5. California State Sheriffs' Association – Affordable Care Act – August 2014
6. National Commission on Correctional Health Association – Viewing Correctional Healthcare as a Payor – October 2014
7. Honorary Sheriff Deputy Association- Redesigning Medical and Mental Healthcare in San Diego County Jails: A life and death challenge 2015

8. Police Chief's Presentation: Redesigning Medical and Mental Healthcare: 5 Year Plan
9. San Diego Mental Health Coalition: Mental Health care in San Diego Jails – April 2015
10. Citizens Law Enforcement Review Board Presentation – Suicide Prevention Strategies – July 2015
11. Behavioral Health Advisory Board- Nov 2015
12. San Diego Law Society- Redesigning Mental Health Care in Jails Nov 2015
13. National Commission on Correctional Health Association – Inmate Safety Program – April 2016
14. Grand Jury Presentation- Mental Health San Diego Jails July 2016
15. California Coalition for Mental Health - Correctional Mental Health Care September 2016
16. San Diego Organization of Healthcare Leaders (SOHL) Correctional Healthcare and Information Technology: San Diego County Jails and San Diego Health Connect October 2016
17. American Correctional Health Services Association - Inmate Safety Program- San Diego Jails October 2016
18. Mental Health Services OAC: Jail Mental Health Services (Panel Discussion)- March 2017
19. Past Grand Jury Association- June 2017: Overview of Jail Medical and Mental Health Services
20. California Crisis Intervention Training Association (CCITA): Redesigning Medical and Mental Health Services in Jails August 2017
21. Health Trained Deputy Sheriff Training- August 2018
22. Emergency Medical Response Oversight Committee (EMOC): Jail Medical and Mental Health Service February 2018
23. UC San Diego Department of Psychiatry Presentation: Correctional Medicine- March 2018
24. Citizens Law Enforcement Review Board (CLERB): Future of Jail Medical and Mental Health Services- February 2018
25. National Commission on Correctional Health Association – Evolution of a Suicide Prevention Protocol – April 2018
26. National Commission on Correctional Health Association – Hepatitis A Outbreak and a County Jail Response – April 2018
27. Mental Health Symposium- Jail Mental Health Expert Speaker – April 2018

## IV. PUBLICATIONS

1. Joshua A, Chan T., Castillo E.; A Tool for Emergency Department Throughput: Using Maximum ED Bed Time to Reduce Wait Times and the Number of Left Without Being Seen Patients Annals of Emergency Medicine 9/2010 (Abstract)
2. Nordt SP, Minns A, Carstairs S, Kreshak A, Campbell C, Tomaszewski C, Hayden SH, Clark RF, Joshua A, Ly BT: Mass sociogenic illness initially reported as carbon monoxide poisoning. J Emerg Med 2012;42(2):159-161.
3. Campbell, Joshua, Medak, et al. Is ultrasound-guided subclavian vein cannulation more successful than traditional methods? Academic Emergency Medicine. 2011; Blackwell Publishing Ltd. Vol 18(5) S211. (abstract)

3

003

4. Karla DW, Bovet J, Haynes B, Joshua A, et al. Training law enforcement to respond to opioid overdose with naloxone: Impact on knowledge, attitudes, and interactions with community members. *Drug and Alcohol Dependence* 2016
5. Degner N, Joshua A, et al. Comparison of Digital Chest Radiography to Purified Protein Derivative for Screening of Tuberculosis in Newly Admitted Inmates. Journal of Correctional Healthcare 2016 Vol. 22(4) 322-330

**Book Chapters:**

1. Joshua A: Blunt neck trauma. In: <u>Rosen and Barkin's 5-Minute Emergency Medicine Consult</u> (fourth edition). Schaider J, Hayden SR, Wolfe R, Barkin RM, Barkin A, Shayne P, Rosen P (Eds.); Philadelphia: Lippincott Williams & Wilkins, 2010,
2. Joshua A: Subarachnoid hemorrhage. In: <u>Rosen and Barkin's 5-Minute Emergency Medicine Consult</u> (fourth edition). Schaider J, Hayden SR, Wolfe R, Barkin RM, Barkin A, Shayne P, Rosen P (Eds.); Philadelphia: Lippincott Williams & Wilkins, 2010
3. Joshua A: Abdominal Imaging, Trauma. In: <u>Rosen and Barkin's 5-Minute Emergency Medicine Consult</u> (fourth edition). Schaider J, Hayden SR, Wolfe R, Barkin RM, Barkin A, Shayne P, Rosen P (Eds.); Philadelphia: Lippincott Williams & Wilkins, 2013

**V. CASES** (Involving Deposition or Trial Testimony in the Past Four Years)

1. Kangas v County of Orange et al. (Deposition)- January 2021 (CASE NO: 8:18-cv-02063-JVS-DFM)
2. Ryan v Wyoming Department of Corrections et al. (Deposition)- February 2021 (Civil No: 20-CV-98-J)
3. Zuniga v County of San Bernardino et al. (Deposition)- May 2021 (CASE NO: CIVDS-1620852)
4. Bestafka v Kings County et al. (Deposition)- July 2021 (CASE NO: 18C-0256)
5. Neal v Wexford Health Services et al. (Deposition)- July 2021 (1:15-cv-03278-ELH)
6. Greer v County of San Diego et al. (Deposition)-August 2021 (CASE NO 19-cv-0378-GPC-DEB)
7. Estate of Ruth Freiwald v Adeyemi Fatoki et al. (Trial Testimony)- August 2021 (CASE NO. 18-CV-896)
8. Washington v Armor Correctional Health et al. (Deposition)- September (Vol 1) and October (Vol 2) 2021 (CASE NO: 3:20-CV-88)
9. Johnson v CFMG et al. (Deposition)- December 2021 (CASE NO: 2:19-cv-01722-JAM-DB)
10. Lee v Turn Key Health Clinics et al. (Deposition)- December 2021 (CASE NO: 19-cv-318-GKF-JFJ)
11. United States of America v Todd Kozel (Hearing)- January 2022 (CASE NO: Crim No 1:19-cr-00460 (KMW)
12. Schurawlow v Wilson et al. (Trial Testimony)- April 2022 (CASE NO: 5:20-cv-03493-EGS)
13. Hill v Phelps County et al. (Trial Testimony)-May 2022 (CASE NO: 4:20-cv-00804-JMB)

4

004

14. Harkins v CFMG et al. (Deposition)-June 2022 (CASE NO: 2:20-cv-00347-KJM-EFB)
15. Hill v Naphcare et al. (Trial Testimony)-July 2022 (CASE NO: 2:20-cv-00410-RMP)
16. Stewart v Precythe et al. (Deposition)-July 2022 (CASE NO: 1:18-cv-00229-ACL)
17. Michelle v Naphcare et al. (Deposition)- August 2022 (CASE NO: 2:19-cv-01987)
18. Daniels v Wellpath et al. (Deposition)- December 2022 (CASE NO: 2:21-cv-00277-MCE-CKD)
19. Wilson v County of San Bernardino et al. (Deposition)-December 2022 (CASE NO: CIVDS1600447)
20. Thomas v Southern Health Partners et al. (Deposition)-January 2023 (CASE NO: 2:21-cv-00012)
21. Strickland v Delaware County et al. (Deposition)-June 2023 (CASE NO: 2:21-cv-04141-MMB)
22. Picciano v NaphCare et al. (Deposition)- June 2023 (CASE NO: 3:20-cv-06106-RAJ)
23. Rose v Wexford et. Al. (Deposition)-November 2023 (CASE NO: 5:22-cv-00405)
24. Berrier v University Hospitals Health System et al. (Deposition)-May 2024 (CASE NO: CV 21955652)
25. Wright v Wellpath et al (Deposition)-October 2024 (CASE NO: 2:23-cv-04115)
26. Thomas v Southern Health Partners et al. (Trial Testimony)-February 2025 (CASE NO: 2:21-cv-00012)

## VI. MATERIALS REVIEWED

In preparation for forming the opinions expressed below, in addition to my experience in the correctional healthcare field, I have reviewed the following materials:

1. National Commission on Correctional Health Standards, Jails 2018

   **Deposition Transcript**
2. Nancy Park, MD
3. Jason Beasom
4. Jennifer Kelly
5. Laura Williams
6. Martin, Holly
7. Clayton McCray
8. Donald Stechschulte,
9. Ashley Brinkman, PhD
10. Sgt Randy Justice
11. Robyn Smith

    **Allegheny County Jail (ACJ) Medical Record and other documents.**
12. AC_CM_000001 - AC_CM_002154 - McCray Medical Records.pdf
13. AC_CM_000001 - AC_CM_003251 -McCray Medical Record et al 1.zip
14. AC_CM_002155 - AC_CM_002155 - Fayette Transfer Sheet.pdf

15. AC_CM_002156 - AC_CM_002156 - DOC   169149  - Misconduct    - MCCRAY, CLAYTON - 5-28-2020 - Jail - Misconduct Hearing Report Form.pdf
16. AC_CM_002157 - AC_CM_002157 - DOC   169149  - Misconduct    - MCCRAY, CLAYTON - 5-28-2020 - Jail - Misconduct Report.pdf
17. AC_CM_002158 - AC_CM_002158 - DOC   169149  - Misconduct    - MCCRAY, CLAYTON - 6-23-2020 - Jail - Misconduct Hearing Report Form.pdf
18. AC_CM_002159 - AC_CM_002159 - DOC   169149  - Misconduct    - MCCRAY, CLAYTON - 6-23-2020 - Jail - Misconduct Report.pdf
19. AC_CM_002160 - AC_CM_002160 - DOC   169149  - Misconduct    - MCCRAY, CLAYTON - 9-4-2020 - Jail - Misconduct Hearing Report Form.pdf
20. AC_CM_002161 - AC_CM_002161 - DOC   169149  - Misconduct    - MCCRAY, CLAYTON - 9-4-2020 - Jail - Misconduct Report.pdf
21. AC_CM_002162 - AC_CM_002162 - DOC   169149  - Misconduct    - MCCRAY, CLAYTON - 10-17-2019 - Jail - Misconduct Report.pdf
22. AC_CM_002163 - AC_CM_002163 - DOC   169149  - Misconduct    - MCCRAY, CLAYTON - 11-20-2018 - Jail - Misconduct Hearing Report Form.pdf
23. AC_CM_002164 - AC_CM_002164 - DOC   169149  - Misconduct    - MCCRAY, CLAYTON - 11-20-2018 - Jail - Misconduct Report.pdf
24. AC_CM_002165 - AC_CM_002165 - DOC   169149  - Complaint   15442 - MCCRAY, CLAYTON -  - Jail - Complaint Officer s Findings Form.pdf
25. AC_CM_002166 - AC_CM_002166 - DOC   169149  - Complaint   15442 - MCCRAY, CLAYTON - 10-9-2019 - Jail - Inmate Complaint.pdf
26. AC_CM_002167 - AC_CM_002167 - DOC   169149  - Complaint   15576 - MCCRAY, CLAYTON -  - Jail - Complaint Officer s Findings Form.pdf
27. AC_CM_002168 - AC_CM_002168 - DOC   169149  - Complaint   15576 - MCCRAY, CLAYTON - 10-21-2019 - Jail - Inmate Complaint.pdf
28. AC_CM_002169 - AC_CM_002169 - DOC   169149  - Complaint   15644 - MCCRAY, CLAYTON - 10-29-2019 - Jail - Inmate Complaint.pdf
29. AC_CM_002170 - AC_CM_002170 - DOC   169149  - Complaint   16094 - MCCRAY, CLAYTON -  - Jail - Complaint Officer s Findings Form.pdf
30. AC_CM_002171 - AC_CM_002171 - DOC   169149  - Complaint   16094 - MCCRAY, CLAYTON - 12-18-2019 - Jail - Inmate Complaint.pdf
31. AC_CM_002172 - AC_CM_002172 - DOC   169149  - Complaint   16453 - MCCRAY, CLAYTON -  - Jail - Complaint Officer s Findings Form.pdf
32. AC_CM_002173 - AC_CM_002173 - DOC   169149  - Complaint   16453 - MCCRAY, CLAYTON - 2-15-2020 - Jail - Inmate Complaint.pdf
33. AC_CM_002174 - AC_CM_002174 - DOC   169149  - Complaint   16735 - MCCRAY, CLAYTON -  - Jail - Complaint Officer s Findings Form.pdf
34. AC_CM_002175 - AC_CM_002175 - DOC   169149  - Complaint   16735 - MCCRAY, CLAYTON - 3-17-2020 - Jail - Inmate Complaint.pdf
35. AC_CM_002176 - AC_CM_002176 - DOC   169149  - Complaint   16925 - MCCRAY, CLAYTON -  - Jail - Complaint Officer s Findings Form.pdf
36. AC_CM_002177 - AC_CM_002177 - DOC   169149  - Complaint   16925 - MCCRAY, CLAYTON - 3-26-2020 - Jail - Inmate Complaint.pdf
37. AC_CM_002178 - AC_CM_002178 - DOC   169149  - Complaint   16926 - MCCRAY, CLAYTON -  - Jail - Complaint Officer s Findings Form.pdf

006

38. AC_CM_002179 - AC_CM_002179 - DOC 169149 - Complaint 16926 - MCCRAY, CLAYTON - 3-31-2020 - Jail - Inmate Complaint.pdf
39. AC_CM_002180 - AC_CM_002180 - DOC 169149 - Complaint 16986 - MCCRAY, CLAYTON -  - Jail - Complaint Officer s Findings Form.pdf
40. AC_CM_002181 - AC_CM_002181 - DOC 169149 - Complaint 16986 - MCCRAY, CLAYTON - 3-31-2020 - Jail - Inmate Complaint.pdf
41. AC_CM_002182 - AC_CM_002182 - DOC 169149 - Complaint 17648 - MCCRAY, CLAYTON -  - Jail - Complaint Officer s Findings Form.pdf
42. AC_CM_002183 - AC_CM_002183 - DOC 169149 - Complaint 17648 - MCCRAY, CLAYTON - 6-19-2020 - Jail - Inmate Complaint.pdf
43. AC_CM_002184 - AC_CM_002184 - DOC 169149 - Complaint 17649 - MCCRAY, CLAYTON -  - Jail - Complaint Officer s Findings Form.pdf
44. AC_CM_002185 - AC_CM_002185 - DOC 169149 - Complaint 17649 - MCCRAY, CLAYTON - 6-18-2020 - Jail - Inmate Complaint.pdf
45. AC_CM_002186 - AC_CM_002186 - DOC 169149 - Complaint 17652 - MCCRAY, CLAYTON -  - Jail - Complaint Officer s Findings Form.pdf
46. AC_CM_002187 - AC_CM_002187 - DOC 169149 - Complaint 17652 - MCCRAY, CLAYTON - 6-1-2020 - Jail - Inmate Complaint.pdf
47. AC_CM_002188 - AC_CM_002188 - DOC 169149 - Complaint 17653 - MCCRAY, CLAYTON -  - Jail - Complaint Officer s Findings Form.pdf
48. AC_CM_002189 - AC_CM_002189 - DOC 169149 - Complaint 17653 - MCCRAY, CLAYTON - 5-31-2020 - Jail - Inmate Complaint.pdf
49. AC_CM_002190 - AC_CM_002190 - DOC 169149 - Complaint 18385 - MCCRAY, CLAYTON -  - Jail - Complaint Officer s Findings Form.pdf
50. AC_CM_002191 - AC_CM_002191 - DOC 169149 - Complaint 18385 - MCCRAY, CLAYTON - 9-27-2020 - Jail - Inmate Complaint.pdf
51. AC_CM_002192 - AC_CM_002192 - DOC 169149 - Complaint 18389 - MCCRAY, CLAYTON -  - Jail - Complaint Officer s Findings Form.pdf
52. AC_CM_002193 - AC_CM_002193 - DOC 169149 - Complaint 18389 - MCCRAY, CLAYTON - 10-1-2020 - Jail - Inmate Complaint.pdf
53. AC_CM_002194 - AC_CM_002203 - McCray Incident Report - 05.28.2020.pdf
54. AC_CM_002204 - AC_CM_002235 - classification file 1.pdf
55. AC_CM_002236 - AC_CM_002263 - classification file 2.pdf
56. AC_CM_002237 - AC_CM_002238 - booking.pdf
57. AC_CM_003250 - AC_CM_003251 - Commissary .pdf

**Medical Records from The Pennsylvania Department of Corrections.**

58. Plaintiff's Medical Records from SCI Fayette and Mercer\MCCRAY__000001-000120.pdf
59. Plaintiff's Medical Records from SCI Fayette and Mercer\MCCRAY__000121-000239.pdf
60. Plaintiff's Medical Records from SCI Fayette and Mercer\MCCRAY__000240-000332.pdf

**Outside Medical Records**

61. MCCRAY_057076-MCCRAY_057158 - UNION ORTHOTICS PROSTHETICS.pdf
62. MCCRAY_057156-MCCRAY_057167_South Hills Orthopedics Associates.pdf
63. MCCRAY_057168-MCCRAY_057171_MCCRAY Rite Aid History Prescription.pdf
64. MCCRAY_057172-MCCRAY_057175_South Hills Ortho Surgery.pdf
65. MCCRAY_057176-MCCRAY_057211- Dr. Mary Ann Miknevich.pdf

**Medical Records Ordered by AHN's Counsel**
66. MCCRAY - Dr. Mary Ann Miknevich.pdf
67. MCCRAY - SOUTH HILLS ORTHOPEDIC BILLING.pdf
68. MCCRAY - UNION ORTHOTICS PROSTHETICS.pdf
69. MCCRAY, CLAYTON _AMANDA L. HARRINGTON, MD,1400 LOCUST STREET,_202472513286545.PDF
70. Plaintiff Expert Report of Dr. Lee C. Ruotsi
71. Plaintiff Expert Report of Dr. Mary Ann Miknevick
72. MCCRAY_0057314-MCCRAY_0057736- McCray Medical Records From Plaintiff
73. NCCHC Allegheny Technical Assistance Redacted.pdf

## VII. SUMMARY OF DOCUMENT REVIEW*

| DATE | SUMMARY OF EVENT |
|---|---|
| 2012 | Mr. Clayton McCray noted to have a right heel pressure ulcer. |
| July 2013 | Mr. Clayton McCray noted to have a right buttocks ulcer requiring wound vac and home health nursing. |
| January 13, 2014 | Mr. Clayton McCray seen by podiatrist and had debridement of right heel osteomyelitis. |
| 2014 | Mr. Clayton McCray incarcerated at Allegheny County Jail. |
| 2015 | Mr. Clayton McCray incarcerated at Allegheny County Jail. |
| 2018 | Mr. Clayton McCray incarcerated at Allegheny County Jail. History significant for Mr. McCray using his cane as weapon during a fight. |
| December 2018 | Mr. Clayton McCray incarcerated at SCI Fayette and developed a right heel ulcer wound. |
| February 7, 2019 | Mr. Clayton McCray given supplies to perform right heel pressure ulcer wound care by himself while at SCI Fayette |
| February 2019 | Mr. Clayton McCray at SCI Fayette and sent out to see Dr. Slipak at AGH Orthopedics for Incision and Drainage procedure of right heel pressure ulcer. |
| May 2019 | Mr. Clayton McCray (while incarcerated at SCI Mercer) sent out to UPMC Montefiore for sepsis caused by right heel pressure ulcer and had PICC line placed for IV antibiotic therapy. |

| DATE | SUMMARY OF EVENT |
|---|---|
| May 30, 2019-June 4, 2019 | Mr. Clayton McCray incarcerated at Allegheny County Jail (transferred from State Prison (SCI). |
| June 2019 | Mr. Clayton McCray seen at Washington Health System for right heel pressure ulcer while at SCI. |
| September 16, 2019 | Mr. Clayton McCray transferred to Allegheny County Jail from SCI. During this incarceration stay, Mr. McCray referred to outside specialist podiatrist who saw him regularly and prescribed the wound care regimen. |
| February 24, 2020 | Mr. McCray seen by podiatrist for wound care regimen. |
| March 2020 | COVID-19 Pandemic restrictions and isolation protocols initiated in the United States |
| March 24, 2020-April 8, 2020 | Mr. McCray placed into restrictive housing unit (RHU) Level 8D. Appointment for podiatrist wound care appointment On March 24 not completed due to COVID-19 pandemic restrictions. |
| May 22, 2020 | McCray had an x-ray of his right foot which shows osteomyelitis of his right calcaneus. |
| May 29, 2020-June 19, 2020 | Mr. McCray placed into disciplinary housing unit for being caught with K2 (illicit synthetic marijuana) |
| June 29, 2020-October 2020 | Mr. McCray remains in medical housing unit where he receives daily wound care by clinical staff, specialist referrals, and special treatments for his right heel osteomyelitis. |
| September 10, 2020 | Mr. McCray undergoes a below the knee amputation of right leg by orthopedic surgeon after discussing risks and benefits of the procedure. Mr. McCray declines cement procedure of right heel to avoid amputation. Mr. McCray previously had a second opinion. |
| October 2020 | Mr. McCray transferred back to SCI for 7 days before released out of prison to the community. |
| 2023 | Mr. McCray has hospitalizations related to osteomyelitis. |

**\*This summary of events is not an extensive summary of all medical care Mr. Clayton McCray received while incarcerated at Allegheny County Jail (ACJ) or State Correctional Institute (SCI).**

## VIII. OPINION

Based on my review of the documents provided, my education and training, as well as administrative and clinical experience in both the correctional health care and hospital setting, it is my opinion that the Allegheny County Jail and its clinical staff met the standard of care with their care of Mr. Clayton McCray's right heel wound while he was incarcerated at Allegheny County Jail during his incarceration from September 16, 2019 through October 2020. It should be noted that a part of Mr. McCray's incarceration period (March 2020-October 2020) was during the height of the COVID-19 pandemic where there were lockdowns, changing isolation and treatment

9

protocols, and widespread disruption of health care services both in the community and correctional health care setting. During this period, patients in the community were not getting elective and urgent medical care and procedures such as oncology surgeries, preventative screenings, as well as chemotherapy and radiation treatments due to various restrictions and provider availability caused by isolation, testing, and distancing protocols. Many correctional facilities (starting in March 2020) had strict isolation protocols to prevent the spread of COVID-19 at a time when there was no vaccine and conflicting information on treatment and risk factors. During this time, Mr. McCray's condition seems to be exacerbated by his own noncompliance to medical advice on leg elevation, non-weight bearing to right lower extremity and using banned substances such as K2 (smoking illicit synthetic marijuana). It should be further noted that Mr. McCray's right foot ulcer developed in December 2018 while at SCI Fayette which he confirmed in his deposition and is ten months prior to his arrival at Allegheny County Jail (ACJ). Prior to his arrival at ACJ, Mr. McCray was already seen by an orthopedic surgeon for debridement of his right heel pressure ulcer, hospitalized due to sepsis related to his right foot ulcer, and seen by another health system for treatment of his right heel pressure wound. During his incarceration at SCI Fayette, Mr. McCray also received supplies to perform wound care himself. In the Complaint, this fact is glossed over and Mr. McCray tries to imply his pressure ulcer either first appeared at Allegheny County Jail or it was perfectly treated before his arrival at ACJ. He equates this to daily wound care performed by only clinical staff at SCI. Neither of this is the case based on his outpatient clinical visit to an orthopedic surgeon for debridement, hospitalization for the ulcer which needed weeks of IV antibiotic therapy, or documentation of receiving supplies for self-wound care prior to his arrival at Allegheny County Jail. Moreover, his right heel wound has been a chronic site of infection and complications as early as 2012 when it is noted first in medical records. Even Dr. Miknevich states the right heel ulcer occurred as early as 2013 in her letter. Thus, his right foot wound should be considered a chronic wound that increased his risk for future complications independent of his compliance to medical recommendations and his poor healing related to his neuropathy. Even when he is offered an alternative to amputation by his orthopedic surgeon in September 2020, he elects for amputation after understanding the risks and benefits of the procedure. He was offered an alternative procedure that could have avoided his amputation (cement procedure). Thus, this was elective and should be considered his decision based on suffering a decade of right heel wound care, hospitalizations, specialist visits, and treatments rather than in isolation of his time at Allegheny County Jail in September 2019 through October 2020.

   Mr. Clayton McCray is a 26-year-old male (at the time of his allegations) with a past medical history of spinal cord injury from a gunshot wound in 2011 with consequent neurogenic bladder and neuropathy and s/p kidney removal and liver damage from this incident. He develops an ulcer to his right foot approximately 10 months before he arrives at Allegheny County Jail. At no point, did this wound ever heal. In fact, in April 2019, he is sent out to the Emergency department and hospitalized for sepsis due to this ulcerated lesion on his right foot. Once an ulcer develops, it is very important to be compliant with clinical recommendations in order to have expedited healing of the wound. It is clear based on various medical records, Mr. McCray was not compliant to stay in medical housing, leg elevation or non-weight bearing status. Neuropathy is associated with poor wound healing. Thus, it is even more important for McCray to be compliant with recommendations. Once a chronic wound has occurred, many patients see exacerbations of infection with repeated course of antibiotics and wound care. Unfortunately, with Mr. McCray's neuropathy, this risk factor cannot be reversed for normal wound healing. The medical providers

at Allegheny County Jail followed the standard of care with Mr. McCray's right heel pressure ulcer and provided appropriate wound care, antibiotics, and referrals as needed throughout his incarceration In my opinion, this outcome would have occurred if Mr. McCray was at home, skilled nurse facility, or any correctional facility.

The clinical claims in this case can be summed up in the following four issues based on the Complaint, Grievances, and Mr. McCray's deposition:

1. Daily Wound Care and daily assistance from medical staff for wound care
2. Nutrition (Extra Shakes daily)
3. Assistive Devices and continuation of SCI provided Shoes
4. Pain Management of right heel pressure ulcer

Daily wound care and supplies from the jail clinical staff seems to be the primary focus of why Mr. McCray felt his wound got worse. Many of the grievances are related to this issue. But it is clear, Mr. McCray could handle his right heel wound care by himself as he received the supplies while at State Prison in February 2019 and when he was out in the community as far back as 2013. If daily wound care delivered by only medical staff was the standard of care for all similar wounds and pressure ulcers in the community, the rate of amputations would be very high. This is clearly not the case nor the standard of care and shows other factors that were related to Mr. McCray's right below the knee amputation (BKA).

Mr. McCray states he sometimes did not receive nutrition shakes that were ordered for him as the reason his wound did not heal properly. Even when he is provided with shakes, he does not consume them, and they were in fact stored by him in his cell. There are no clinical conditions such as HIV, malignancy, or intestinal malabsorption or gut resection that would lead to needing another type of shake to be provided every day for the purposes of wound healing.

Mr. McCray's deposition states his primary problem with the clinical providers was that they did not continue the order for his special shoes he received while at SCI. He furthermore states he did get the AFO in his deposition for his "dropped foot" but it was no longer a concern due to the pressure ulcer on his right heel. The other assistive devices such as crutches and canes were removed and given back at various times. The medical records make it clear the cane was used as a weapon and that he was witnessed by Dr. Donald Stechschulte to be walking without crutches, even when he had access to such assistive devices, which further worsened his right heel pressure ulcer. These claims are made in the backdrop of noncompliance to non-weight bearing instructions by the clinical providers and on at least one occasion utilizing the assistive devices as a weapon.

Mr. McCray states he had severe pain that was not managed. In his deposition he admits he could feel pressure, hot and cold but had decreased sensation. He still describes it as pain. His symptoms appear to be neuropathic pain which he was prescribed gabapentin for. He does state he was given Tylenol from time to time. It seems his issue was the lack of narcotic or opiate pain medications to treat his pain. This was a clinical decision by the providers but there is no evidence based on his description of his symptoms, his personal history (multiple incarcerations for

possession of drugs), chronic nature of pain (no acute injury), that opiates would be the best treatment option for him (even though it was provided when he was in medical housing unit).

In conclusion, Mr. McCray attempts to state that his incarceration at Allegheny County Jail and the clinical care he received from September 2019 to October 2020 was the only cause of his right extremity below the knee amputation for his right heel pressure ulcer. It is clear from the medical records, his right heel pressure wound spanned various times over a decade with multiple treatments, hospitalizations, antibiotics, and assistive devices. His right heel pressure ulcer (the latest episode) started 10 months prior to his incarceration at ACJ and complicated with noncompliance to clinical direction. Furthermore, this episode occurs in the backdrop of COVID-19 shutdowns which caused significant disruptions to inmate and clinical practices. Even with all of these factors, Mr. McCray chose the BKA for his chronic right pressure ulcer rather than another procedure that may have saved his foot. Mr. McCray's understood the risks and benefits of that decision. At no time, did Mr. McCray suffer from necrotizing fasciitis or other emergent condition that would require immediate removal of his right foot/leg. Thus, it was his decision to make and whether the chronic wound care treatments for repeated infections, hospitalizations, antibiotics, and assistive devices over a decade was worth continuing versus amputation below his right knee.

Plaintiff Expert Reports of Dr. Lee Ruosti and Dr. Mary Miknevich do not address many of the issues of Mr. Cray's clinical history that directly contributed to his below the knee amputation. Mr. Cray's right heel wound was persistent site of infection for over a decade and the latest episode did not occur in Allegheny County Jail but at the prison approximately nine months before. This wound was complicated with a hospitalization and sepsis and in all likelihood Mr. McCray probably had chronic osteomyelitis even before Mr. McCray enters Allegheny County Jail. To state that documentation of wound care or orthotics was the sole cause of the amputation is disingenuous as the clinical literature is clear that wounds that have repeated infections, chronicity, and complications are more at risk for amputation. The second factor that was not addressed in their reports was the COVID-19 pandemic and the isolation protocols. There was disruption to all healthcare and correctional facilities at a time when there was no vaccine and provider and sworn staff unavailability at many facilities for fear of the virus. This has to be accounted for as this was a unique time in American history where policies and procedures were constantly changing and individuals confined to cells for lengthy periods of time due to quarantine protocols that were designed to minimize the spread of very virulent strains of COVID-19. Thirdly, both reports do not address Mr. McCray's well known and documented noncompliance to clinical recommendations such as leg elevation and non-weight wearing status which clearly exacerbated the right heel wound and caused delayed healing. Lastly, both reports do not talk about the alternate surgical option presented to Mr. McCray (cement procedure which he states in his deposition testimony) in an attempt to salvage the extremity. This is important, as the amputation was largely an elective procedure (not emergent) and Mr. McCray made the decision after understanding the risks and benefits of an amputation vs another procedure which may have saved his leg but required continued wound care. It is a reasonable decision for a patient to choose an amputation to prevent repeated wound care treatments, antibiotics, and hospitalizations that Mr. McCray did in fact suffer from for under a decade. Thus, it is clear both Plaintiff Expert Reports try to lay sole causation and damages from a right heel wound to Allegheny County Jail that neither started in ACJ, had patient compliance to have optimal wound care results, in non-pandemic settings, or accounted for patient

decision making in choosing the amputation over another procedure that may have salvaged his leg.

My opinions in this case are given with a reasonable degree of medical probability and based on my experience in the correctional health field and clinical arenas, including my training, education, relevant clinical literature review when applicable, and upon the documentation provided to me for review. I reserve the right to change this opinion in the event additional documentation is provided in this matter.

Executed on February 18, 2025, in San Diego, California

_____
Alfred Joshua, MD, MBA, CCHP-P, FAAEM

1. Uptodate.com: Lower Extremity Amputations